*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 20-AA-0396

STUART ANDERSON, SR., PETITIONER,

V.

DISTRICT OF COLUMBIA
DEPARTMENT OF EMPLOYMENT SERVICES, RESPONDENT,

and

PRO-FOOTBALL, INC., *et al.*, INTERVENORS.

On Petition for Review of a Decision and Order of the
District of Columbia Department of Employment Services
Compensation Review Board
(1924-CRB-000020)

(Argued June 7, 2022                                      Decided October 12, 2023)

*Benjamin T. Boscolo* for petitioner.

*Robin E. Hauptmann* for intervenors Pro-Football, Inc. and Fireman's Fund Insurance Co.

*Sheryl A. Tirocchi* for intervenors Pro-Football, Inc. and Great Divide Insurance Company.

*Karl A. Racine*, Attorney General for the District of Columbia, at the time, *Loren L. AliKhan*, Solicitor General, at the time, *Caroline S. Van Zile*, Principal Deputy Solicitor General, and *Carl J. Schifferle*, Deputy Solicitor General, filed a Statement in Lieu of Brief.

Before DEAHL and HOWARD, *Associate Judges*, and GLICKMAN,[*] *Senior Judge*.

GLICKMAN, *Senior Judge*: Petitioner Stuart Anderson played professional football for the Washington Redskins (now known as the Washington Commanders) in the mid-1980s. In 2018 and 2019, he filed claims against the team under the Workers' Compensation Act, seeking medical treatment for arthritis in his hips that he attributed to injuries and cumulative trauma he had sustained as a professional football player. The Administrative Law Judge (ALJ) denied Mr. Anderson's claims as untimely, and the Compensation Review Board (CRB) affirmed. Mr. Anderson argues that his claims were timely, mainly based on his testimony that the team knew in 1984 that he had hurt his right hip, but the ALJ discredited that testimony. For the reasons that follow, we affirm the determination that Mr. Anderson's claims were untimely.

**I.**

"In a worker's compensation case, we review the decision of the [CRB], not that of the ALJ . . . In doing so, however, we cannot ignore the compensation order

---

[*] Judge Glickman was an Associate Judge of the court at the time of argument. He began his service as a Senior Judge on December 21, 2022.

which is the subject of the [CRB]'s review."[1] We review findings of fact under the substantial evidence standard,[2] which mandates that we affirm where the CRB's decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[3] We review legal issues de novo, but "[i]n reviewing an administrative agency's construction of a statute, we 'accord great deference to the interpretation of the agency charged with its administration, particularly if the interpretation is of long standing and has been consistently applied.'"[4] Ultimately, "[t]o the extent that the CRB properly conducts its review of the decision of the ALJ, we will affirm the ruling unless it is 'arbitrary, capricious, or otherwise an abuse of discretion and not in accordance with the law.'"[5]

---

[1] *Wash. Metro. Area Trans. Auth. (WMATA) v. D.C. Dep't of Emp. Servs.*, 926 A.2d 140, 147 (D.C. 2007) (quoting *Georgetown Univ. Hosp. v. D.C. Dep't of Emp. Servs.*, 916 A.2d 149, 151 (D.C. 2007)).

[2] *Id.* at 146-47.

[3] *Id.* at 147 (quoting *Ferreira v. D.C. Dep't of Emp. Servs.*, 667 A.2d 310, 312 (D.C. 1995)).

[4] *Safeway Stores, Inc. v. D.C. Dep't of Emp. Servs.*, 832 A.2d 1267, 1269 (D.C. 2003) (quoting *Immigr. & Naturalization Serv. v. Cardoza-Fonseca*, 480 U.S. 421, 445-46 (1987)).

[5] *WMATA*, 926 A.2d at 147 (quoting *Landesberg v. D.C. Dep't of Emp. Servs.*, 794 A.2d 607, 612 (D.C. 2002)).

## II.

The Workers' Compensation Act provides for a one-year time limit on the filing of claims in D.C. Code §32-1514(a), which states:

> the right to compensation for disability or death under this chapter shall be barred unless a claim therefor is filed within 1 year after the injury or death . . . . The time for filing a claim shall not begin to run until the employee or beneficiary is aware, or by the exercise of reasonable diligence should have been aware, of the relationship between the injury or death and the employment.

In cases involving cumulative trauma claims, where it is difficult to pinpoint a specific date on which the injury was caused by a workplace accident (or a specific date on which an employee should have been aware of the relationship between an injury and the employment), the CRB has applied a "manifestation rule," which sets the date of injury for such a claim as "the date the employee first seeks medical treatment for his/her symptoms or the date the employee stops working due to his/her symptoms, whichever first occurs."[6]

---

[6] *Brown-Carson v. D.C. Dep't of Emp. Servs.*, 159 A.3d 303, 306 (D.C. 2017) (quoting *VanHoose v. Respicare Home Respiratory Care*, CRB No. 07-022, 2007 D.C. Wrk. Comp. LEXIS 409, at *17 (July 23, 2007)); *see also, e.g.*, *Cutter v. Potomac Elec. Power Co.*, CRB No. 22-014, 2022 DC Wrk. Comp. LEXIS 77, at *5 (Apr. 19, 2022) ("[c]umulative traumas manifest when a claimant (1) misses work or obtains medical care expressly for the injury in question and (2) the injury's seriousness can reasonably be apprehended as potentially disabling") (citation omitted); *Witt v. Lincoln Hockey*, CRB No. 17-039, 2017 DC Wrk. Comp. LEXIS

Applying that standard here, Mr. Anderson's claims were time-barred because he knew about the putative relationship between his hip problems and the trauma he sustained as a professional football player, since he began seeking medical treatment for those problems, at least four years before he filed his claims in 2018 and 2019, as both the ALJ and the CRB held. Mr. Anderson testified to those facts at the hearing before the ALJ, and his medical and other records confirm it. In 2013, Mr. Anderson sought disability benefits under the National Football League ("NFL") Player Retirement Plan (the Plan); his chief complaints at that time, according to the NFL independent medical examination, included a bilateral hip injury. Mr. Anderson's subsequent 2014 application to the Plan for disability benefits listed his need for "hip replacements." In his testimony before the ALJ, Mr. Anderson confirmed that when he filed that application in 2014, he "believed that [his] bilateral hip condition was caused by [his] employment with the Redskins," based on his consultation with at least one doctor (Dr. McCue). Later in the hearing, the ALJ asked Mr. Anderson, "[a]fter your football career, when did you begin to think that your right hip pain was caused by playing football?" Mr. Anderson responded,

---

305, at *9 (July 18, 2017) ("in cumulative trauma cases, the date of injury, or 'manifestation' of the condition, does not occur until a claimant is aware not only of the injury and its connection to employment, but is also, through the application or reasonable diligence, aware enough about the nature of the injury or condition to comprehend its seriousness").

"[w]ell, I knew it all along." We thus conclude that the one-year time limit in D.C. Code §32-1514(a) applies to Mr. Anderson's claims.

### III.

Where an employer or its carrier has been given notice or has knowledge of an employee's injury, the one-year time limit in D.C. Code § 32-1514(a) on filing a claim is tolled and does not begin to run against the claim until the employer files a First Report of Injury (FROI) as required by D.C. Code § 32-1532(a). *See* D.C. Code § 32-1532(f). As the CRB confirmed in its decision in this case, this means "the statute of limitations is only enforceable if the Employer did not have notice of the injury or if the Employer had notice and filed a FROI."

Mr. Anderson argues that this tolling provision applies here, based on his testimony that he told his trainer that he had hip pain when he injured his groin playing football in the mid-1980's (and was diagnosed with a right groin muscle pull or strain), meaning his employer had notice of his hip injury, but the team did not file a report of it. However, the contemporaneous records of his physical therapy and 55 visits to his trainer do not show he ever made such a complaint (though those records show he did complain of a bruised knee in addition to his groin injury). Moreover, X-rays of his pelvis and right hip taken on July 26, 1984, in connection with the treatment of his right groin injury, showed "no evidence of a fracture or destructive lesion of the right hip" and no other sign of recent injury to it. ("The

contours of both femoral heads is normal . . . . The soft tissues of the right hip are normal.") Although the report noted "[d]iminution of the joint space, superiorly, of both hips," the CRB properly noted that neither the report nor any contemporaneous medical records link this condition to Mr. Anderson's employment. As a result, because the relationship between the injury and his employment was not established, the employer was not on notice even if the condition noted on the report was related to Mr. Anderson's current condition.[7]

The ALJ explained that she discredited Mr. Anderson's testimony that he told his trainer about his hip pain, based in part on his medical records and on his demeanor and inconsistent testimony. We are satisfied that this credibility finding

---

[7] The CRB also properly rejected Mr. Anderson's argument that the mere fact X-rays of his hip were taken provided "constructive notice" of a work-related hip injury, or at least of a complaint thereof. "Actual notice" of an injury and its relationship to the worker's employment is required, as the CRB correctly held. *See Howard Univ. Hosp. v. D.C. Dep't of Emp. Servs.*, 960 A.2d 603, 609 (D.C. 2008). The X-rays in this case showed no hip injury related to Mr. Anderson's employment and did not indicate there had been any complaint of such an injury.

D.C. Code § 32-1521(2) creates a rebuttable presumption that claimants gave their employer notice of their injury in a timely fashion. *See Dillon v. D.C. Dep't of Emp. Servs.*, 912 A.2d 556, 559 (D.C. 2006). However, assuming that Mr. Anderson's testimony was sufficient to invoke the presumption, the evidence presented before the ALJ, including Mr. Anderson's medical history from his time with the team, was more than "specific and comprehensive enough" to rebut the presumption. *Wash. Post v. D.C. Dep't of Emp. Servs.*, 852 A.2d 909, 911 (D.C. 2004) (citing *Ferreira*, 531 A.2d at 655).

is supported by substantial evidence in the record. We thus conclude that the one-year limitations period on filing a claim was not tolled in this case under section 32-1532(f).

## IV.

Mr. Anderson also argues that the one-year limitation period of D.C. Code § 32-1514(a) applies, by its terms, only to "the right to compensation," and therefore does not apply to his current claim for medical benefits. This court has acknowledged that the meaning of the word "compensation" as used throughout the Workers' Compensation Act is variable and "context-specific,"[8] and that it may or may not encompass medical benefits depending on the particular statutory provision

---

[8] *Moore v. D.C. Dep't of Emp. Servs.*, 211 A.3d 159, 163 (D.C. 2019).

in question.[9]  Where, as here in its use of the word "compensation," a statute is ambiguous, we must defer to the CRB's interpretation "so long as it is reasonable."[10]

Mr. Anderson argues that, since a failure to give timely notice of an injury within 30 days does not bar a subsequent claim for medical benefits under section 32-1513, a failure to file such a claim within the one-year limitations period imposed by section 32-1514 also should not be a bar.  The logic of that contention is not clear to us.  It is contrary to the long-held view of the CRB and the Department of Employment Services, which is that the one-year limitations period for filing a claim

---

[9] *Compare Moore*, 211 A.3d at 163-64 (concluding that "the CRB reasonably interpreted 'compensation' in [D.C. Code] § 32-1535(g) to include medical costs," meaning that the employer's liability for such costs is extinguished by an employee's compromise of a claim against a third party without the employer's consent, "based on the twin goals of avoiding double recovery by the employee and preventing prejudice to the employer by settlements that compromise the employer's lien") *with Safeway Stores, Inc.*, 832 A.2d at 1270-71 (deferring to the agency's interpretation that the potential forfeiture of compensation on account of an employee's failure to give notice of injury within 30 days, as required by D.C. Code § 32-1513, does not extend to the loss of medical benefits).

[10] *Moore*, 211 A.3d at 161 (quoting *Pannell-Pringle v. D.C. Dep't of Emp. Servs.*, 806 A.2d 209, 211 (D.C. 2002)); *see also, e.g.*, *Proctor v. D.C. Dep't of Emp. Servs.*, 737 A.2d 534, 538 (D.C. 1999) ("[S]o long as the agency's construction is reasonable and does not conflict with the plain meaning of the statute or its legislative history, we are bound by it and 'must sustain [it] even if a petitioner advances another reasonable interpretation of the statute or if we might have been persuaded by the alternate interpretation had we been construing the statute in the first instance.'") (quoting *Smith v. D.C. Dep't of Emp. Servs.*, 548 A.2d 95, 97 (D.C. 1988)).

applies to claims for medical benefits even though a mere failure to give 30 days'

notice of the injury does not foreclose such claims.[11]  The CRB adhered to that view

in the instant case.  It agreed with the rationale offered by intervenors:

> [I]f the CRB were to adopt the definition of "compensation" in *Safeway Stores* to the statute of limitations for filing cla[i]ms as Claimant suggests, it would essentially render the statu[t]e of limitations useless and create an unlimited window for a claimant to file a claim for medi[c]al benefits.  This would frustrate the

---

[11]  The regulations governing the private sector workers' compensation program state explicitly that "[i]n accordance with § 15 of the Act (§ 36-314, D.C. Code, 1981 ed.) [the previous codification of section 32-1514], *all claims* shall be made by injured employees or their beneficiaries in writing within one (1) year of the injury or death, except as hereafter provided."  7 D.C.M.R. § 207.1 (emphasis added).  There is no exception for claims limited to medical benefits.  And when confronted with the question in 2007, the CRB stated:

> Finally, we turn to the question of the Petitioner's compliance with D.C. Official Code § 32-1514(a).  The Panel notes that the Petitioner requested both compensation and causally related medical expenses.  Thus, while a determination that the Petitioner has failed to comply with the notice requirements of D.C. Official Code § 32-1513, and that such failure is not excused pursuant to subsection (d)(2) thereof, will serve to bar the claim for compensation, it does not bar the Petitioner's claim for payment of causally-related medical benefits.  *Safeway Stores, Inc. v. D.C. Department of Employment Services*, 832 A.2d 1267, 1271(D.C. 2003).  In such an eventuality, the Petitioner's claim for medical benefits will only be barred should it be determined that the Petitioner also failed to timely file her claim.

*VanHoose*, 2007 DC Wrk. Comp. LEXIS 409, at *24-25.

> purpose of the statute of limitations, which is to protect the employer from stale claims and to provide finality by setting a definitive endpoint to claims.

We consider the CRB's interpretation of section 32-1514 to be reasonable, and we perceive no reason to reject it. We thus conclude that the one-year statute of limitations in D.C. Code § 32-1514(a) applies to Mr. Anderson's claim for medical benefits.

For the foregoing reasons, we affirm the decision of the CRB.

*So ordered.*